UNITED STATES DISTRICT COURT
WESTERN DIVISION OF KENTUCKY
LOUISVILLE DIVISION

DALE A. CATLETT                                                                                         PLAINTIFF

v.                                                                    CIVIL ACTION NO. 3:23-cv-408-BJB

AVIS BUDGET GROUP                                                                                 DEFENDANT

**MEMORANDUM OPINION AND ORDER**

      Plaintiff Dale A. Catlett, unrepresented by counsel, filed a lawsuit invoking this Court's diversity jurisdiction. Because Plaintiff is proceeding *in forma pauperis* under 28 U.S.C. § 1915, the Court must undertake a preliminary review of the Complaint. *See* 28 U.S.C. § 1915(e); *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 594 U.S. 199 (2007). Upon review, the Court dismisses some claims, allows others to continue, and provides Plaintiff an opportunity to file an amended complaint.

**I. STATEMENT OF CLAIMS**

      According to the factual allegations in the Complaint, which the Court must accept as true at this stage, Plaintiff was employed by Avis Budget Group as an "Operations Manager" at its Louisville Airport location. On March 13, 2023, while driving a company vehicle, he was "involved in a hit-and-run accident." DN 1, PageID #: 1. "The accident was promptly reported to the police, and an accident report was filed with the police." *Id*. Plaintiff's direct supervisor, Ken Kolodey, discouraged him from "escalating the report to human resources or senior management due to fear/threat of job loss." *Id*. Kolodey "attempted to misrepresent the incident by falsely attributing the accident to a previous renter in a text message to the maintenance department manager," but "Plaintiff did not comply with this deception." *Id*., PageID #: 1–2.

Kolodey then "attempted unauthorized access to Plaintiff's personal cell phone, which was caught on a security app." But Kolodey denied this, instead falsely claiming that he intended to access the company cell phone. *Id.*, PageID #: 2. Plaintiff reported "this violation of personal privacy to another supervisor" and to Avis's "HR department" and "integrity line." *Id.* But he was "threatened with criminal charges after the incident . . . to keep him from reporting the above incidents." *Id.* "Despite following all required procedures," he asserts, "the Plaintiff was later suspended and eventually terminated . . . out of retaliation[.]" *Id.*

Avis's failure to comply with "state requirements" to file a "certificate of compliance" after the accident, according to Plaintiff, eventually led to the suspension of his Indiana driver's license. *Id.* This "negligence" harmed him through lost employment opportunities and income. *Id.*, PageID #: 3.

Finally, Plaintiff alleges that Avis intentionally misclassified him as an exempt employee, when he should've been classified as non-exempt under the Fair Labor Standards Act, to avoid paying him overtime. *Id.*, PageID #: 2.

The Complaint lists 11 claims: (1) wrongful termination, (2) negligence, (3) invasion of privacy, (4) intentional infliction of emotional distress (IIED), (5) breach of contract (termination), (6) defamation, (7) negligent supervision, (8) violation of the FLSA, (9) breach of contract (salary), (10) personal injury, and (11) denial of proper meal breaks under Kentucky and federal labor laws.

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding *in forma pauperis*, this Court must review the Complaint. *See* § 1915(e)(2); *McGore v. Wrigglesworth*, 114 F.3d at 608-09. A case must be dismissed if it is "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. § 1915(e)(2)(B). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982), a complaint must include "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III. ANALYSIS

### A. Jurisdiction and Venue

"Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Hudson v. Coleman*, 347 F.3d 138, 141 (6th Cir. 2003). As the party invoking federal jurisdiction, Plaintiff bears the burden of establishing that subject-matter jurisdiction exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Plaintiff states that he is a resident of Indiana, that Avis is a corporation with its principal place of business in New Jersey, and that the amount in controversy exceeds $75,000. DN 1, PageID #: 1. As such, diversity jurisdiction under 28 U.S.C. § 1332 appears to exist in this case. Moreover, it appears to the Court that on the face of the Complaint venue is appropriate because Avis employed Plaintiff at the Louisville airport, which sits within the Western District of Kentucky. 28 U.S.C. § 1391(a)(2) (venue in a diversity case may lie in "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").

3

### B. Choice-of-law

Federal courts in diversity cases apply the choice-of-law rules of the state in which they sit—here, Kentucky. *Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 366 (6th Cir. 2022) (citing *Klaxon Co. v. Stentor Elect. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)); *State Farm Mut. Auto. Ins. Co. v. Norcold, Inc.*, 849 F.3d 328, 331 (6th Cir. 2017). Plaintiff raises both tort and breach-of-contract claims. "Kentucky has different choice-of-law rules for cases that sound in tort versus those that sound in contract." *Hall v. Rag-O-Rama, LLC*, No. 18-cv-12, 2020 WL 2134121, at *5 (E.D. Ky. May 5, 2020) (citations omitted)). In both instances, however, courts follow Kentucky's "'strong preference'" to apply its own law to cases brought in Kentucky courts. *Id.* (quoting *Wells Fargo Fin. Leasing, Inc. v. Griffin*, 970 F. Supp. 2d 700, 707 (E.D. Ky. 2013) (collecting cases)).[1]

### *1. Tort claims*

For tort claims, Kentucky law will apply "'if there are significant contacts—not necessarily the most significant contacts—with Kentucky.'" *Evans v. Novolex Holdings, LLC*, No. 20-cv-98, 2021 WL 2187347, at *3 (E.D. Ky. May 28, 2021) (quoting *Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. 1972)). As in this case, *Evans* addressed whether a resident of another state working in Kentucky at the defendant's place of business establishes sufficiently "significant" contacts for Kentucky tort law to apply. *Id.* The *Evans* Court held that significant contacts existed such that Kentucky's tort law applied. The Court reaches the same conclusion here. Plaintiff worked at Avis's place of business in Kentucky and the bulk of the allegations

---

[1] "Courts in the Sixth Circuit . . . regularly conduct choice of law analyses at the motion to dismiss stage, and such an analysis is proper where the relevant facts are not disputed." *Sadiqyar v. Mission Essential, LLC*, No. 2:19-CV-04292, 2020 WL 5210850, at *4 (S.D. Ohio Sept. 1, 2020) (citing cases). This Court's initial review under § 1915(e)(2) is analogous to consideration of a motion to dismiss. *See, e.g.*, *Moniz v. Cox*, 512 F. App'x 495, 497 (6th Cir. 2013). The Court acknowledges that it has only limited facts before it and, consequently, its choice-of-law determination may require revisiting.

spring from that employment relationship. This reflects significant contacts sufficient to apply Kentucky tort law.

### *2. Contract claims*

Absent a valid choice-of-law clause electing otherwise, Kentucky law applies in contract cases whose facts meet "the 'most significant contacts' test, set forth in § 188 of the Restatement (Second) of Conflict Laws." *Acuity Brands, Inc. v. Bickley*, 172 F. Supp. 3d 971, 981 (E.D. Ky. 2016) (citing *Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009) (footnote omitted). Under the "most significant contacts" approach, "'[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties[.]'" *First Mercury Ins. Co. v. ARMR Grp.*, 617 F. Supp. 3d 694, 699 (E.D. Ky. 2022) (quoting *Saleba*, 300 S.W.3d at 181) (quoting Restatement (Second) of Conflict of Laws § 188(1)).

Section 188 of the Restatement directs consideration of several factors in determining which law applies to a contract lacking an effective choice-of-law provision.[2] These include "'(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.'" *Hall*, 2020 WL 2134121, at *5 n.5 (quoting Restatement (Second) of Conflict of Laws § 188(1)).

Kentucky's contract law applies to this case. In interpreting a contract with no choice-of-law provision, "Kentucky's preference for applying its own law and the lack of an overwhelming

---

[2] For purposes of this initial review, the Court presumes that the alleged contract (which has not yet been made available to the Court) did not contain a choice-of-law provision. Plaintiff never mentions one and doesn't attach any contract.

interest to the contrary" means "Kentucky law [applies] to this dispute." *First Mercury Ins. Co.*, 617 F. Supp. 3d at 700.

### C. Plaintiff's claims

#### *1. Wrongful termination*

Plaintiff alleges that he was performing his employment duties in a satisfactory manner but was terminated after "he reported a workplace incident and refused to participate in an unethical cover-up scheme." DN 1, PageID #: 3. Plaintiff alleges that he refused to take part in a "misrepresentation [of] the incident by falsely attributing the accident to a previous renter." *Id.*, PageID #: 1. He also alleges that his termination was retaliation for refusing to participate in the "cover-up scheme and his reporting of the incident." *Id.*, PageID #: 3.

Recovering damages for a common-law wrongful-termination claim requires a discharge contrary to a fundamental and well-defined public policy as evidenced by a constitutional or statutory provision. *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985).

> Under the first constraint, Kentucky courts only recognize three circumstances in which a discharge is actionable under the public policy exception," and they are: "(1) when there are explicit legislative statements prohibiting the discharge; (2) when the alleged reason for the discharge was the employee's failure or refusal to violate a law in the course of employment; or (3) when the reason for the discharge was the employee's exercise of a right conferred by well-established legislative enactment.

*Wollor v. Collins Aerospace Headquarters*, No. 3:23- -cv-306, 2024 WL 25097, at *8 (W.D. Ky. Jan. 2, 2024) (internal quotation marks and citations omitted). "In addition to satisfying one of those conditions, the public policy being invoked must have an employment-related nexus." *Id.* at *8 (internal quotation marks and citations omitted).

Plaintiff does not allege that he refused to violate a law—only that he refused to participate in an "unethical cover-up scheme" by refusing to agree to a "misrepresentation [of]

6

the incident by falsely attributing the accident to a previous renter." DN 1, PageID #: 1. Although Plaintiff doesn't cite a particular law he refused to violate, his allegations could be read liberally to allege that he refused to go along with a cover up that may have constituted fraud against an insurer or previous renter (or perhaps a fraud or misrepresentation of some other variety). He says that after police and his direct supervisor received an accident report, he was discouraged from escalating the report to human resources or senior management. Although the precise policy his wrongful-termination claim relies on remains less that clear, Plaintiff has plausibly suggested that this alleged cover-up may have violated a statute. So the Court will allow this claim to continue. *See Clarke v. Amazon.com Servs. LLC*, No. 2:23-cv-114, 2023 WL 7003220, at *2, *4 (E.D. Ky. Oct. 24, 2023) ("At the pleading stage, [the] Complaint, even in the absence of specific statutory references, makes sufficient allegations to support a claim of wrongful termination in violation of public policy," because plaintiff alleged that his termination "was contrary to public policy because he was fired for refusing to violate the law.").

## *2. Negligence*

Plaintiff asserts that Avis had a duty to file a certificate of compliance with the Bureau of Motor Vehicles (BMV) in Indiana, where Plaintiff was licensed to drive, but failed to do so. As a result, he lost his license and therefore money and valuable professional opportunities. DN 1, PageID #: 3–4.

To establish a *prima facie* case of negligence, Plaintiff must prove: (1) Avis owed a duty to Plaintiff; (2) Avis breached that duty; (3) the breach was the actual and legal cause of Plaintiff's injuries; and (4) Plaintiff's injuries resulted in damages. *Vaughn v. Target Corp.*, No. 3:13- cv-521, 2014 WL 4999194, at *2 (W.D. Ky. Oct. 7, 2014) (citing *Helton v. Montgomery*, 595 S.W.2d 257, 258 (Ky. App. 1980)).

Reading the Complaint liberally, the Court holds that Plaintiff has stated a claim that Avis owed him a duty to file a form with the Indiana BMV, and did not do so, causing the suspension of Plaintiff's driver's license and resulting damages, such as lost income.

The Court allows this claim to continue.

### 3. Invasion of privacy

Plaintiff alleges that Avis "through its employee Ken Kolodey, intentionally invaded [his] privacy by attempting to access his personal cell phone without his consent." DN 1, PageID #: 4.

"There are four theories under which a plaintiff may recover for invasion of privacy under Kentucky law: (1) intrusion upon another person's seclusion, (2) appropriation of another person's name or likeness, (3) unreasonable publicity into another person's private life, and (4) publicity that places another person in false light." *Dukes v. Mid-E. Athletic Conf.*, 213 F. Supp. 3d 887, 892 (W.D. Ky. 2016). For intrusion upon seclusion—the theory that seems most applicable to Plaintiff's allegations—a plaintiff must show "(1) an intentional intrusion by the defendant, (2) into a matter the plaintiff has a right to keep private, (3) which is highly offensive to a reasonable person." *Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808, 822 (W.D. Ky. 2003) (citing Restatement (Second) of Torts § 652B); *see also Wiles v. Ascom Transp. Sys., Inc.*, 478 F. App'x 283, 293-94 (6th Cir. 2012).

For purposes of this initial review, the Court presumes that the contents of Plaintiff's cell phone would include matters that Plaintiff has a right to keep private and that intruding upon them would be highly offensive to a reasonable person. *See Thomas v. Goodlett*, No. 3:18-cv-275, 2021 WL 11628682, at *4 (W.D. Ky. Mar. 4, 2021) ("Goodlett's search of Plaintiff's personal cellphone that resulted in Goodlett taking custody of Plaintiff's personal and private

photographs, is a clear violation of Plaintiff's 'right to be let alone.'"), *report and recommendation adopted*, No. 3:18-cv-275, 2021 WL 11628679 (W.D. Ky. Mar. 19, 2021).

Plaintiff, however, does not allege an invasion of his privacy—only an *unsuccessful* attempt to do so due to a security application on his phone. Plaintiff, therefore, fails to allege the existence of the first element of this tort. So the Court dismisses his invasion-of-privacy claim for failure to state a claim for which relief may be granted.

### 4. IIED

Plaintiff incorporates all of his preceding allegations in asserting that Avis, "through its actions and conduct, intentionally or recklessly caused [him] severe emotional distress," that Avis's conduct was "extreme and outrageous, going beyond all possible bounds of decency and was utterly intolerable in a civilized community," and that "[a]s a direct and proximate result . . . [he]suffered damages in an amount to be determined at trial." DN 1, PageID #: 4. The Court dismisses this claim for two reasons.

First, the Kentucky Supreme Court "has repeatedly held" that the tort of outrage, or the intentional infliction of emotional distress,[3] "is a 'gap-filler' tort that will not lie if a more traditional tort applies." *Miles v. Bottom*, No. 5:15-cv-126, 2016 WL 2344222, at *4 (E.D. Ky. May 3, 2016) (citations omitted). Plaintiff has asserted three other potentially plausible claims (wrongful termination, negligence, and defamation) based on this same pattern, however, undermining any notion that the tort of IIED is necessary as a "gap-filler." *See Shaw v. Handy*, 588 S.W.3d 459, 461-62 (Ky. Ct. App. 2019) ("The rule in Kentucky is that an IIED claim cannot be brought when the same facts would support a traditional tort."); *Litsey v. Allen*, 371 S.W.3d 786, 789 (Ky. Ct. App. 2012), *as modified* (June 29, 2012) ("Where an actor's conduct

---

[3] *See Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 298 (Ky. Ct. App. 1993).

amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie.").

Second, Kentucky's IIED tort requires: "'[1] [t]he wrongdoer's conduct must be intentional or reckless; [2] the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; [3] there must be a causal connection between the wrongdoer's conduct and the emotional distress[;] and [4] the distress suffered must be severe.'" *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 459 (6th Cir. 2008) (alterations in original) (quoting *Osborne v. Payne*, 31 S.W.3d 911, 913–14 (Ky. 2000)). "'Distress that does not significantly affect the plaintiff[']s everyday life or require significant treatment' is not serious or severe under Kentucky law." *Hall*, 2020 WL 2134121, at *20 (quoting *Osborne v. Kenney*, 399 S.W.3d 1, 17 (Ky. 2012)). Plaintiff does not allege distress requiring significant treatment or significantly affecting his everyday life. (He attributes his lost employment to the firing, for example, not to his distress that resulted from the firing.) Kentucky courts have held that "'[t]ermination from employment, even if for discriminatory reasons, is insufficient to constitute outrageous conduct sufficient to support a claim for intentional infliction of emotional distress.'" *Hall*, 2020 WL 2134121, at *20 (quoting *Highlands Hosp. Corp. v. Preece*, 323 S.W.3d 357, 368–69 (Ky. Ct. App. 2010)).

The Court dismisses Plaintiff's IIED claim for failure to state a claim.

### *5. Breach of contract (wrongful termination)*

Plaintiff alleges that he and Avis "entered into an employment contract, either express or implied, that included terms for the conditions of employment and termination," which Avis

10

breached by terminating his employment "without just cause and in retaliation for his reporting of a workplace incident." DN 1, PageID #: 5.

Kentucky is an at-will employment state. So an employer may discharge an employee "for good cause, for no cause, or for a cause that some might view as morally indefensible." *Wymer v. JH Props., Inc.*, 50 S.W.3d 195, 198 (Ky. 2001). Plaintiff does not allege the existence of a contract expressly designating him as an at-will employee. Under Kentucky law, without a showing that the contract contained "'a clear statement indicating the employer will not terminate without cause, the assumption is that the parties intended to enter into an ordinary employment relationship, terminable at the will of either party.'" *Murton v. Android Indus. Bowling Green, LLC*, No. 1:13-cv-112, 2015 WL 3549817, at *4–5 (W.D. Ky. June 4, 2015) (quoting *McNutt v. Mediplex of Ky, Inc.*, 836 F. Supp. 419, 421 (W.D. Ky. 1993)).

If this was not the case, however, the Plaintiff may amend the Complaint to specify whether any contract included a termination provision that Avis plausibly violated. *See LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) (Under Federal Rule of Civil Procedure 15(a), "a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the [Prison Litigation Reform Act].").

### 6. Defamation

Plaintiff alleges that Avis, through its employees, falsely accused him of abandoning his post without permission. This accusation, he says, made its way to third parties—thereby damaging Plaintiff's reputation and causing him damages, including loss of income, loss of benefits, and emotional distress. DN 1, PageID #: 5.

To plead a defamation claim, Plaintiff must plausibly allege that Avis used (1) defamatory language (2) about Plaintiff that (3) was published and (4) injured Plaintiff's

11

reputation. *Fin. Ventures, LLC v. King*, No. 4:15-cv-28, 2016 WL 9460307, at *2 (W.D. Ky. Aug. 5, 2016). Because Plaintiff has alleged a defamation claim (if only in the most barebones way), this claim will continue.

Plaintiff has not, however, said to whom any publication was made. Kentucky has "recognized a privilege for individuals communicating 'where the communication is one in which the party has an interest and it is made to another having a corresponding interest,'" such as in the employment context. *Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276, 282–83 (Ky. 2014), as corrected (Apr. 7, 2015) (footnotes and citations omitted). In such a case, "'false and defamatory statements will not give rise to a cause of action unless maliciously uttered' . . . [and] 'the burden is on the plaintiff to prove actual malice.'" *Id.* at 283. If the allegedly defamatory communication took place between two interested parties, therefore, the qualified privilege would apply.

### 7. *Negligent supervision*

Plaintiff alleges that Avis had a duty to supervise its employees to ensure they were not engaging in harmful or unethical behavior. Yet it allowed Kolodey to invade Plaintiff's privacy. DN 1, PageID #: 5.

Even assuming that Kolodey had succeeded in invading Plaintiff's privacy (which he apparently didn't, *see* above at III.C.3), this claim would fail. "Although the issue has apparently not been addressed by Kentucky state courts, several federal courts have held that Kentucky law does not permit employees to sue their current or former employers for negligent . . . supervision." *Roundtree v. AVI Foodsystems, Inc.*, No. 222CV086, 2023 WL 5255705, at *12 (E.D. Ky. Aug. 15, 2023). This is based on the long history of interpreting Kentucky's worker's compensation law to prohibit an employee's negligence action against his employer. *See Roof v.*

12

*Bel Brands USA, Inc.*, 641 F. App'x 492, 499 (6th Cir. 2016); *Grubbs v. Thermo Fisher Sci.*, No. 13-183-DLB, 2014 WL 1653761, at *2 (E.D. Ky. Apr. 23, 2014) ("Federal courts applying Kentucky law have not applied Kentucky's negligent supervision tort law in the employment context – in other words, an employee cannot sue her employer for negligent supervision[.]") (internal quotation marks omitted); *see also Gatlin v. Shoe Show, Inc.*, No. 3:14-cv-446, 2014 WL 3586498, at *6 (W.D. Ky. July 21, 2014) ("Gatlin cannot maintain a negligent retention claim against . . . her former employer, based on the actions of Pool, her former coworker.").

Accordingly, the Court dismisses this claim for failure to state a claim upon which relief may be granted.

### *8. Violation of the FLSA*

Plaintiff claims that Avis should have paid him overtime because he should have been classified as a non-exempt employee. DN 1, PageID #: 6. According to Plaintiff, despite his "Operations Manager" title, "he performed non-exempt tasks that are not considered managerial in nature and thus, should have been classified as a non-exempt employee under the FLSA." *Id*.

"Employees classified as 'non-exempt' are covered by the FLSA's minimum wage and overtime pay provisions." *Preston v. World Travel Holdings, Inc.*, No. 1:23-cv-12389, 2024 WL 519548, at *1 (D. Mass. Feb. 9, 2024) (citing 29 U.S.C. §§ 206(a), 207(a)(1), 213)). Further, the FLSA provides that an employee may bring "an 'action to recover the liability' for minimum wage or overtime violations" against his employer. *Id.* at *4 (quoting 29 U.S.C. § 216(b)).

The Court allows this claim to continue.

13

### *9. Breach of contract (salary)*

Plaintiff alleges that he and Avis entered into an employment contract—specifically an offer letter that specified a specific salary for each pay period. DN 1, PageID #: 6. According to Plaintiff, rather than pay the specified salary, Avis instead "pro-rat[ed] his pay without prior agreement or justification." *Id*.

Having alleged the elements of a Kentucky breach claim, *i.e.*, the existence of a contract for a specific salary, a breach of that contract, and damages (lost wages), *see EQT Prod. Co. v. Big Sandy Co., L.P.*, 590 S.W.3d 275, 293 (Ky. Ct. App. 2019), the Court allows this claim to continue.

### *10. Personal injury*

Plaintiff alleges that he was involved in a hit-and-run accident and sustained "serious injuries, including, but not limited, to damage to his back, neck, and right hand." DN 1, PageID #: 7. He asserts that Avis had a duty to maintain safe company vehicles and to provide adequate "support and resources in the event of a workplace accident." *Id*. According to Plaintiff, Avis breached its duty "by failing to adequately respond to the accident and by attempting to cover up the incident, thereby exacerbating the physical and emotional distress" he experienced. *Id*.

Because Plaintiff does not allege that an unsafe company vehicle caused his injuries, his allegation that Avis breached its duty in this regard fails.

Further, Plaintiff's allegation that Avis breached its duty to adequately respond to accidents offers no specifics as to what this alleged duty required beyond "support and resources."[4] Having failed to provide any plausible factual basis for this nebulous duty to adequately respond to accidents, the Court dismisses Plaintiff's "personal injury" claim for

---

[4] This does not undermine the Court's decision above to allow Plaintiff's negligence claim to continue on the ground that after the accident, Avis breached its duty to file a certificate of compliance with the Indiana BMV.

failure to state a claim upon which relief may be granted. *See generally Boag*, 454 U.S. at 365; *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (requiring—even from *pro se* litigants—"more than [a] bare assertion of legal conclusions," and instead "either direct or inferential allegations" covering the "material elements" of a cognizable claim).

### *11. Denial of proper meal breaks*

Plaintiff alleges that Avis did not provide uninterrupted meal breaks in violation of Ky. Rev. Stat. § 337.355 as well as unspecified "federal labor laws."

Section 337.355, which is part of the Kentucky Wages and Hours Act, provides that "employers . . . shall grant their employees a reasonable period for lunch[.]" Ky. Rev. Stat. § 337.355. The Act does not allow "an aggrieved employee to personally recover damages for an employer's violation of the Kentucky Wages and Hours Act." But an employee may nonetheless "recover damages by operation of KRS 446.070." This provides that even though a penalty is not conferred by a statute, an injured party may nonetheless recover damages. *England v. Advance Stores Co. Inc.*, 263 F.R.D. 423, 441 (W.D. Ky. 2009) (former employee could maintain private cause of action for alleged violations of denial of lunch and rest breaks).

"[T]he 'FLSA requires remuneration for meal periods during which [an employee] is unable comfortably and adequately to pass the mealtime because the officer's time or attention is devoted primarily to official responsibilities.'" *Crawford v. Lexington-Fayette Urb. Cnty. Gov't*, No. CIV.A. 06-299-JBC, 2008 WL 2885230, at *2 (E.D. Ky. July 22, 2008); *see also Jones-Turner v. Yellow Enter. Sys., LLC*, No. 3:07cv-218-S, 2011 WL 4861882, at *1 (W.D. Ky. Oct. 13, 2011) ("The parties agree that the FLSA does not require that meal and rest breaks be provided. However, where a meal break is provided but an employee is not completely relieved

15

of his duties for an uninterrupted thirty-minute period, the meal break becomes compensable, as the employee remains essentially on-the-clock for the benefit of the employer.").

Reading Plaintiff's Complaint liberally, the Court allows this state- and federal-law claim to continue.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the Court **DISMISSES** Plaintiff's claims of invasion of privacy, IIED, negligent supervision, and personal injury related to the hit-and-run accident for failure to state a claim under 28 U.S.C. § 1915A(b)(1), and

**ORDERS** that **within 30 days** from the entry date of this Memorandum Opinion and Order, Plaintiff may file an amended complaint to provide specific allegations as to the alleged employment contract's provision for termination.

The Court instructs the Clerk to place this case number and "Amended" on a § 1983 complaint form and send it to Plaintiff for his use should he wish to file an amended complaint.

Once Plaintiff has filed his amended Complaint or the 30-day period to do so has passed, the Court will enter an Order for service of process on Avis by the U.S. Marshals Service.

Date: July 18, 2024

Benjamin Beaton, District Judge
United States District Court

cc: Plaintiff, *pro se*
    Defendant
B213.009